or however you pronounce it, number 14-2868. Is it Ghosh? Yes. And Ms. Levin, you're supervising? Yes. And Mr. Geiger? Geiger, yes. And Mr. Donofsky? Yes, Your Honor. Thank you. Take your time setting up. Whenever you're ready. Good afternoon, Your Honors, and may it please the Court. My name is Rhea Ghosh, and I'm here on behalf of William Rock, the appellant. May I reserve three minutes for rebuttal? You sure may. Thank you. Mr. Rock was hurt in October, and he was supposed to have seen a doctor initially when? Was it October? October 16th. 16th or 19th? 19th. And that got postponed to the 4th, and then the 4th got postponed to November 11th. But by November 6th, he was transferred from Monroe County facility to a state facility, is that correct? Correct. And yet, the only people being sued here are county employees or officials, is that correct? That's correct. Why not, if he didn't ultimately see a hand specialist until the following July, why were the state folks not brought into this suit? We can't speak to what Mr. Rock was thinking at the time he filed the suit, which was on the eve of the statute of limitations. That said, the initial delay was the point at which his doctor, who ultimately performed surgery on him, Dr. Hughes, said that the majority of the damage happened in his affidavit, he testified to that. Unfortunately, he was not able to seek expert testimony to confirm that. But based on the evidence on the record, which at the summary judgment stage should have been taken in favor of Mr. Rock, he should have been seen during the first 30 days, and that's when the majority of the injury occurred, potentially necessitating the surgery. That said, we can't speak to why exactly he sued these defendants, but at this point, the defendants' behavior was sufficiently culpable that under the summary judgment standard, they should be sued. Was the surgery that was done the following September or October, was it successful when they did the graft? It was successful, however, there are indications from his doctor that it would not have required tendon harvest, and he had to go through a lengthy recovery period to recover functioning in his hand. So while he doesn't have any permanent damage, he still incurred significant difficulty and hardship, not to mention the eight months that he had to sit in prison enduring terrible pain. What evidence is there that the district court made any attempt to appoint counsel? Was there an effort at all to appoint an attorney in this case? So Mr. Rock reached out to a number of attorneys prior to discovery and at the early stages of the case, none of whom took it on, and Mr. Rock filed two different motions for appointment of counsel. He wrote a letter too, right? He wrote a letter and then filed two motions. Correct. He wrote a number of letters and in all of his complaints he mentioned, except excluding the first, he mentioned that he did not know how to follow the rules of procedure and requested at that time that the court appoint counsel. But did the court reach out to you? To any counsel to request? Correct. No, Your Honor. You don't know they did not?  They did not. What's the strongest evidence that Rock's treatment was delayed for non-medical reasons? The strongest evidence is that, first of all, given that it's the summary judgment stage, there is no indication anywhere in the record that there was any sort of medical disagreement about this issue. No one contends that he should not have been seen. Let's assume that's all correct, but somehow I understand it was delayed from October 19 to November 4 initially. Was that delay because of prison officials interceding for a non-medical reason or is that because of something on the medical end that there was an issue there? Let's just go with that one first. It's entirely unclear from the record and the defendant's interrogatories shed no additional light on that question. So given the circumstances and that there was no medical opinion offered that suggested that he could be seen at a later date, there was no informed judgment made as to that fact. Summary judgment should not have been granted on the basis of the limited... Well, I mean, he's got the burden of showing that his treatment was delayed for non-medical reasons, so he has to show something. It looks like the record doesn't have much here. And he was saying at one point in his letter that he needed more help. One of the things he said was he needed expert testimony. Well, that's got nothing to do with whether there's a non-medical reason for a delay. And the second thing was he needed to have... I'm looking at the letter. He needs to interview witnesses. What witnesses did he wish to interview that could possibly shed some light on whether the delay from October 11th ultimately to his transfer on November 6th was for a, we're going to get even with him, or whatever it might be? Yes, Your Honor. The witnesses he was specifically hoping to interview were Dr. Wagner, the treating physician at the emergency room, and Dr. Hughes, the physician who ultimately performed his surgery. And the interview would shed light on the importance of his being seen by the end of the week, as was specifically recommended in the discharge instructions. And the circumstantial evidence there would suggest that if it was critical... I'll agree with you, despite what was said, this might be a serious medical need. But the question is, for these persons, these defendants, to be found liable, they have to have done something to delay medical treatment to him for this serious medical condition for a non-medical reason. And I can't find anything in the record that shows that there was a non-medical reason. I'm not saying there may not have been, there's nothing that I can find. In her interrogatories, Dr. Wilson suggests when asked about why the appointment was not scheduled sooner, Dr. Wilson says presumably it was a scheduling issue. And that ultimately the district court took its conclusion to be that the appointment was scheduled at the earliest possible time. And in addition to drawing an inference based on very limited information from an interrogatory that is no more than speculation, that also would be an invalid reason for the medical defense to grant summary judgment at this stage. Where is the deliberate indifference? Deliberate indifference is because... So, first of all, it's important to remember that this is still the summary judgment stage. So at this point, there is sufficient evidence coming from the failure to account for the delay in timing, despite the fact that there were clear medical instructions. That might be negligence, but where does it show that there is an intent? Judge Restrepo's question and mine intersect. Is there an intent for a non-medical reason to say, the heck with this person, serious medical need, and we're just going to ignore it, period. And deliberate indifference is a pretty high standard. Correct. So, reckless disregard of a serious medical need can also constitute deliberate indifference. And circumstantial evidence at this point is all that this defendant... But we're not even sure that it was disregard. We just know that there was a delay of 20 some days, and his prescription, which probably should have been continued, wasn't continued as long as it should have been. But where is that deliberately indifferent? I mean, that is, you know, the case is probably better than I do. And it has to be egregious. So, I think, looking at Natal or Dermer, cases in which a doctor knows about a severe medical need, as in this case, he spoke with Dr. Wilson. She prescribed this medication. She reviewed the emergency discharge instructions and said that she understood them. There's a clear account, that is something to account for, and that could suggest deliberate indifference. And a reasonable juror could find that her disregard of the pain he was in, coupled with failure to schedule this appointment for almost a month when he was supposed to be seen by the end of the week, would lead one to believe deliberate indifference. In addition, there was no accounting for this delay other than the possible scheduling issues, which in and of itself constitutes deliberate indifference. When necessary medical treatment, and no one is denying that this treatment is necessary or was necessary, is delayed for a non-medical reason. And the best reason we were given was non-medical here, that it was presumably a scheduling issue. And this also goes to our other... There's got to be a non-medical reason that goes way beyond negligence. And it goes to a really high standard of intent. We want to really do something to this person, and we don't care. So the other issue here is the denial of counsel. And your questions actually touch on that because Mr. Rock was not given the opportunity to conduct meaningful discovery. Mr. Rock was not able to depose these witnesses in this kind of case because it hinges on state of mind evidence and circumstantial evidence. The difficulty is he was forced to rely solely on interrogatories, which are carefully crafted by lawyers. So what's the district court's obligation here? I understand that he requested counsel. Is it your argument that the district court is obligated to try to find somebody? Yes, sir. We believe that this case should be remanded with a request for counsel. So that the district court shouldn't reach out and say, well, somebody take this case. Because the district court can't force somebody to take it. Correct. At what stage did you get involved in this case? We became involved at the appeals, at the beginning of the appeal. So he had no counsel throughout. He has a 10th grade education. He had never filed a lawsuit before, so he was forced to navigate this complex system from scratch. And as we see throughout the various procedural errors he made, he failed to file a brief with his motion to amend his complaint. He failed to simple things like that. He wrote letters to the MCCS staff asking for medical records rather than subpoenaing. The kind of thing that a lawyer would know without any sort of second thought how to do. He had to navigate. And furthermore, he filed a number of grievances with the prison that indicated he was not given more than two hours of time in the library in a month at certain periods. The library was closed for three weeks at a time due to staff shortages. He was working under terrible conditions, particularly given his own circumstances and the multiple procedural difficulties he faced throughout. Further evidence that these were major barriers to his case. And the other issue here was that the defendants continually made it difficult for him to get responses even through the interrogatories. And they did this by stonewalling him. So for example, he asked at 688, did you make your own diagnosis of Mr. Roth's hand injury to Ms. Wilson? And that's an important question because in the magistrate's report and recommendation, she suggests that perhaps this was a case of medical disagreement. And in response, Dr. Wilson said, objection, defendant objects to this interrogatory as it is unclear what information the plaintiff is seeking. And without depositions and the ability to follow up on those sorts of questions, and similarly the question about presumptively it being a scheduling issue, without the ability to follow up on that, to ask the next questions, to try and get a real meaningful answer, it's difficult. The plaintiff was doomed to fail from the beginning. Thank you very much. Thank you. We'll hear from Mr. Geiger. Please report. I represent the, my name is Jerry Geiger and I represent the non-medical defendants. And from a factual standpoint, there's just absolutely no claim here. If you look at the timeline, it becomes very clear. My clients had no knowledge of anything relating to Mr. Roth's treatment because his complaint said he wasn't getting the expert to come in and look at him until 22 days after he got back from the emergency room. It was on a Monday. He files a grievance. By Thursday, our grievance coordinator and our deputy warden contacted the medical department, asked them what was going on. They were assured by Dr. Wilson, we have him lined up for an orthopedic evaluation next week. The very next day then, that Friday, he's transferred into the state prison. So they find out about it on a Monday, he's out on a Friday. And in that period, they did their due diligence contacting medical. Because of medical restrictions and privacy laws, it wasn't within our power to be constantly looking at Mr. Roth's medical files. Do you disagree that this person had a serious medical need? No. I think he did. I think at some point, he needed surgery for his thumb. When that was, I'm not sure. How do you distinguish this case from Parham and Montgomery with respect to the appointment of counsel issue? I think in the Parham case, that was an appointment of counsel relating to counsel at trial because the plaintiff in that case made a number of procedural errors, didn't know how to introduce evidence, things like that. With respect to my clients, no expert testimony is even needed. Mine is a purely deliberate indifference issue. If you look at Magistrate Judge Carlson's opinion, he notes when he found in favor of my clients on the report and recommendation that he was looking at deliberate indifference. And in a footnote, he said, well, medical testimony, expert testimony would be needed to prove causation, but we're not even getting there yet because having a four-day period where my people actually did their due diligence, that's not deliberate indifference. So, you know, I don't think expert testimony is needed at all with respect to my clients. What about the need for factual investigation? He had all of his medical records. He had, and again, there's a distinction between my clients and the medical records. What he has is a suspicion that for some reason they are not having this treatment, which is supposed to take place right away, be seen by a doctor. And it turns out it was every bit as bad as some might have feared at the beginning. And so he has to get factual investigation in order to do that. He had no depositions. And, you know, he's not a lawyer. He is unsure how to proceed. He writes a letter that tries to say as best he can what the problems are that he's having. And he mentions besides expert, he can't develop the facts. I mean, he's not, I don't want to play a rock and a hard place. It's a, he's on the side, he can't win. Well, first of all, I disagree with you that we can assume that he needed immediate medical attention. If you'll notice, he was treated by about five or six different doctors, not just at our jail, but in the state system. And the delay in any kind of surgical treatment in the state system was months, many months. I mean, we're only talking about less than 30 days at our jail. Five or six doctors didn't arrange to have him immediately operated on. So I disagree with the premise that he needed immediate attention. But the answer is I don't know. You don't know because you probably need an expert to come to that conclusion, right? You would need an expert to make that conclusion. Not with respect to me. In fact, Judge Schwab in the R&R, page 56, footnote 8, notes that he failed to provide expert testimony. That's right. And the same judge, in a motion to, in response to an appointment of counsel, said Rock's argument, expert testimony was not likely required. So you have a judge taking different positions on the same case. Doesn't that scream out for... Yeah, and if I could, although it's... I understand that, but I think what the court was looking at was the delivered indifference question, which does not need the expert testimony. Do you, I mean, do you need an expert to come in and say we were, we failed to recognize a serious medical need? I don't know. I'm not a doctor. I can't identify a serious medical need and what, whether it needs immediate attention or not. But from my perspective, if you're looking at, my people are saying they're going to a doctor, a licensed doctor, Dr. Wilson, who's saying we've got this taken care of. We have an appointment scheduled next week. That's delivered indifference. That's not even negligence. We're not, we're not medical doctors. And besides, it's undisputed in the record, Warden Asher didn't even know anything about this until after he went to the state system. And that was a specific finding of the district court judge. So, you know, with respect to my people, we're looking at four days where they've been assured by a licensed medical doctor in Pennsylvania, the same type of doctor as Dr. Liegner. And by the way, Dr. Liegner's an internist. He's not an orthopedic guy. He's in a Pocono Medical Center emergency room. So he's seen by a doctor, will be told, follow up with another doctor. I mean, that's what emergency room doctors do. They do triage, right? Right. That's right. And so we don't know, was a conservative form of therapy appropriate in this case to see whether there would be any healing? I don't know the answer to that. But what I do know is that you don't need an expert to prove a case against my clients. And it's four days that are the focus. And we did a lot in those four days just to confirm that he was getting pain meds, anti-inflammatory meds, and an assurance by a doctor that he was being taken care of. The Tylenol No. 3 prescription ran out, did it not? There was a re-prescription by Dr. Wilson at some point. I don't remember if it ever expired before the 30 days. Or after, until Mr. Rock was transferred to the state system. All right. Let's hear from Mr. Lemowski, please. All right. Thank you. May it please the Court. I'm John Janoski. I represent the medical appellees in this particular case. If I may start, Judge Restrepo, with your question. I don't believe that the magistrate took an inconsistent position in this case. In her decision, she said that an expert was likely not needed. She didn't conclusively rule it out. Second of all, the motion to appoint counsel was without prejudice. I've seen multiple instances, especially in the Middle District, because the Middle District, again, from my experience, because I'm in all three regularly, it seems as if after you get through the motion for summary judgment stage, then there's a greater chance of a referral to the pro bono. I would say if it survives, obviously. Correct. And I agree with Mr. Geiger that the record's clear in this particular case. They never got the causation. Expert testimony is absolutely needed in causation. But it isn't needed for deliberate indifference, at least in theory. You can show deliberate indifference without an expert. And the judge... With respect to a medical malpractice claim? This isn't a malpractice claim. With respect to medical treatment? It can be done, absolutely. You do not necessarily need an expert to say that the care was so deficient, it rose to deliberate indifference. If it's such a high standard, it almost should be obvious. Assuming the 10th grade education is equipped to do that. Well, this gentleman did a couple of things. First of all, he did a very good job in articulating his position throughout this case. And there has been reference to some missteps. Maybe he didn't file a brief, so a motion was denied. Always without prejudice. The court helped him throughout this process. If a motion was denied because of a procedural problem, he didn't attach a copy of something, he didn't file a brief that was denied, he re-filed, following the appropriate procedure, and it was ruled upon. This was not a situation where the court was looking for every particular instance that it could to make it difficult for this particular plaintiff. And in fact, discovery, according to my math, is about 18 months that was permitted throughout this case. One of those extensions was provided because he did file a motion to compel, and he did say that there were inadequate answers to discovery. The court said, well, there were answers to discovery, but since you got them late, we're going to give you more time. The court did that on its own. So this isn't a situation where there were procedural impediments that were placed in his way to make it difficult. This is a situation where the court recognized that there were going to be some issues. And Judge Carlson, the magistrate, had the case first. He denied the first request for appointment of counsel. He specifically indicated in his report recommendation that, hey, we understand that this gentleman is pro se. We have leeway in interpreting what he files and not holding him to the same stringent standards as a counsel. So I submit to this court that the Middle District did what it could in trying to make sure that this litigant had an opportunity to litigate his case, and he did. He was able to issue discovery. He has all of his medical records. Whatever arguments he could make and would have to make, he had the ability to do that because the records were there. So just having the records puts somebody in a position to understand them and interpret them? Well, the records are pretty clear in this case. I mean, as far as when things happened, what treatment was ordered, what medications were ordered, it was all very clear. This wasn't a situation where you needed to be an orthopod. It was clear what was going on, or an interpreted MRI result. But it's clear what happened, but not necessarily what should have happened. Well, what should have happened would be, I mean, that's his argument. His argument is that he should have received quicker treatment. He made that argument. And the court disagreed with the argument. The court found that whatever delay there was, there was not a non-medical reason for it, and as such, it doesn't rise to the level of deliberate indifference. He was able to make those arguments with what he had. And he did issue interrogatories multiple sets. He did get answers. He got answers from Dr. Wilson as to why medication was ordered as it was. He got an answer from Dr. Wilson as to, she ordered the orthopedic consult. At that point, it goes to the scheduling, and you rely upon the orthopod or the specialist office as to when that person is going to be seen. We can't dictate, meaning the medical folks at the Montgomery County Correctional Facility, we can't dictate to any specialist out there, you have to see this guy tomorrow. It's based upon when they can fit him in. And there is no delay as to when there was an order issued. And you look at the record, and I believe it was page 741. When you look at it, clearly Dr. Wilson sees him the first day he comes back to the prison, send out for orthopedic consult. There's no delay. Medication was started even before he got, even before he was evaluated by Dr. Wilson, the medication was started via a verbal order. Because he had a script, or at least a recommendation of medication when he left the emergency room. A verbal order was issued to continue the medication. It was modified. But it was not eliminated. Why was there a delay from the 19th of November 4th to the extent you know? To the extent that I know, one, it's based upon the scheduling of the specialist situation. And the other, there was noted in the records that there was an emergency at the facility. Now, we don't, I can't, there is nothing in the record that defines what that is. I can give you a presumption if you want to hear a presumption, but I understand that it isn't in the record. Go ahead. When you're dealing with security concerns, you never want the inmate to know exactly what or when that type of thing, or when appointments are going to occur. In this particular instance, the appointment was scheduled and it was noted as being scheduled. Then we have the emergency that's noted in the record, but the emergency happens before the actual appointment was going to occur. I believe is that there would have been issues at the facility that day for shakedowns of cells or issues for not having available transport. So that's why it was rescheduled. But you don't want to put in the chart, there's going to be a shakedown on that day. You can't do the appointment. Again, that's not in the record. That's a presumption. And then when you had the one week extension from the 4th to the 11th and he's transferred to the state facility. Correct. What causes, when you get into the state facility, it's not understanding that there's an appointment five days from now. Well, once he's transferred to the state system, they take over. I understand. When he entered the state system, they were aware of an injury. But they're not aware that he had an appointment scheduled for November 11th? I don't believe that they were specifically aware of that. Even if he was the inmate not aware of it either, based on what you just said, the inmate would not be aware specifically when he was going out for security reasons. However, he was sent to Graterford. It was Lehigh Valley where that appointment was going to occur. I don't believe that feasibly it could have still happened. The fact that the state folks weren't sued, doesn't that suggest that he's not as sophisticated a plaintiff as you might believe? Sued the wrong people, maybe. I see lawyers who, in my humble opinion, don't sue the right people all the time, Your Honor. And leave people out for strategic reasons. So I won't necessarily concede the point that that means that he wasn't sophisticated. He was not. I'm not trying to say that he was sophisticated. But I'm not saying that that was anything more than he decided not to pursue that angle. For all I know, maybe he wanted to utilize the doctors in the state system as experts in the case, which he could have attempted to do, so you don't sue people that are ultimately going to provide you treatment and hopefully help you give you testimony. That's a pretty sophisticated analysis. Maybe. Maybe. But like I said, I've seen more pro se filings than I care to admit, even more so than you guys, respectfully. But Mr. Rock did a pretty good job. And I think the court, again, respectfully, I think the court in the Middle District did everything they could under the circumstances to assist him throughout this litigation. Thank you very much. Thank you, Your Honors. Ms. Gove? What this case ultimately comes down to is that Mr. Rock was not given a fair opportunity to litigate this case. What evidence do you have? I can keep coming back to it. There has to be some evidence of procedural impediments to seeing a doctor for what is now conceded to be a serious medical need. What evidence do we have in the record to date? Of the procedural impediments to that? Mm-hmm. The mere fact that it wasn't scheduled so that it should have been scheduled by the end of the week on the 16th? That's a delay. But there's impediments to causing something to occur. And then those impediments have to be for non-medical reasons. But what evidence do we have of any procedural impediments before we even say that it was done for some sort of nefarious purpose that rises to the level of deliberate indifference? So, again, this comes back to the issue. As you noted, deliberate indifference is a very high standard. The real issue is that every time Rock tried to gather that information, he was stonewalled or given contradictory responses or, in other ways, given non-responsive discovery. And his inability to take depositions was enough of an impediment to his ability to build his case and find that precise information. But beyond that, the interrogatory responses that he was given, for example, where he did ask who is responsible for scheduling this appointment and was told just to see the dispensary notes, which does not address that question of who is responsible. All of those baseline questions were never addressed. We don't know what this emergency was. And as a prison counsel noted, you can only presume. We don't know who was responsible for scheduling. We don't know all of this information because of the discovery tactics used and because of the fact that Mr. Rock was forced to try and piece together these events that happened outside of his presence, fully outside of his presence. And to meet the standard, as you noted, a very high standard that hinges fully on someone's state of mind at the time. And without even the basic information that he would need just to piece together the timeline. So what are you asking us to do? Are you asking us to remand it for consideration of appointment of counsel? Are you asking us to vacate the summary judgment decision? What are you asking us to do? To vacate the summary judgment decision and remand with instructions for request of counsel. That's the contention. And I'd also like to mention our 50-60 argument, which we didn't have an opportunity to get to. Mr. Rock filed an affidavit attached to both his opposition to the non-medical. You're arguing that that really was a 56-D request. And how do you get us there? It's a good argument in terms of what it should be in order to get you a remand. But how do you make this couple of paragraphs equal a 56-D request? It had all of the hallmarks. First of all, we should keep in mind that Mr. Rock is a pro se litigant, as I mentioned. No, I understand that. So he doesn't have to say 56-D. Correct. And it had all of the hallmarks of a 56-D request. It asked for specific discovery. It said he would like to speak with DOC officials and with Dr. Lagner and Dr. Hughes, his treating physicians, and for the purpose of determining what the reason for the delay was and furthermore, to better understand what the need for the five days was. He also needed expert testimony, I guess, with regard to medical issues, right? Right. So there were a number of things he mentioned in this request. And this Court in Sheldon determined that failure to address a 56-D motion, regardless of how it would have come out in the merits, is an abuse of discretion. The Court never acknowledged that this affidavit was attached to the response to summary judgment, his brief opposing summary judgment. And he clearly met all of the hallmarks of what it takes to constitute a 56-D affidavit. He outlined what information he needed, why this information was material to summary judgment, and why he had been unable to collect this information. So the Court's failure to even consider this motion, or to acknowledge this motion, constitutes an abuse of discretion. Thank you. And thank you to all counsel for very well-presented arguments. One administrative matter with regard to what's been happening this week in connection with the need to have a substitution, where do we stand with respect to that? Your Honor, I should probably speak to that. The bottom line is I believe... Just for the record, just better note your name if you would like. Christine Levin of Deckert, on behalf of the Appellant. The bottom line is I believe that by the end of the week, Ms. Rock will have qualified as administrator of the estate. I know we think this is a simple thing to do, but it's been a very difficult time for her. I understand. And she's doing the best she can. If we put out an order asking that it be done, or requiring that this be done within two weeks, would that suffice? I believe that will be sufficient. Thank you. Okay. Thank you. And thank Ms. Gosch again for taking this matter on. It's really much appreciated. And again, well-argued by everyone. And we couldn't ask for any more. As they say in South Philly, you've done good. We're on recess.